*799 OPINION.
Arnold:
The principal issue in these proceedings is whether the payment by the company to the petitioners in redemption and cancellation of 40 percent of their stock was essentially equivalent to the distribution of a taxable dividend. The petitioners contend that the distribution of February 11,1931, was the first of a series of distributions in liquidation of the company. • The respondent concedes that the distributions by the company in 1932 and 1933 were distributions in liquidation.
The respondent denies, however, that there was any general plan of liquidation at February 11, 1931. It was recognized that the industry was overcapacitated, and that the company would have to restrict the amount of its output. He points particularly to the testimony of Robert E. Einstein as supporting his position that no definite action was taken by the company toward liquidation until 1932, and argues that, since the stock was retired pro rata among' all stockholders, out of earnings accumulated since February 28, 1913, the distribution was essentially equivalent to a taxable dividend and taxable to these petitioners as such.
The governing statute is section 115 of the Revenue Act of 1928. This section defines a dividend as “any distribution made by a corporation to its stockholders * * * out of its earnings or profits accumulated after February 28, 1913.” Sec. 115 (a). The perti *800 nent portion of section 115 (c) [2] states that “amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock.” Section 115 (g) [3] deals with the redemption of stock, and provides that if “a corporation cancels or redeems its stock * * * at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed * * * shall be treated as a taxable dividend.” Section 115 (h) [4] defines partial liquidation.
Section 115 of the Revenue Act of 1928 and the comparable sections of the other revenue acts have been considered from time to time by the Board and the courts in determining whether distributions were in partial liquidation, or were essentially equivalent to taxable dividends. Almost without exception the decided cases hold that each proceeding must be determined upon its own particular facts, making it virtually impossible to state a general rule of construction applicable to all cases. Certain principles have, however, been enunciated by the courts and the Board which aid in arriving at the solution of the problem presented.
It has been pointed out that section 115 (c) in nowise limits distributions in partial liquidation to payments made in the course of winding up the corporation, Commissioner v. Quackenbos, 78 Fed. (2d) 156 (C. C. A., 2d Cir.); and that the redemption of a part of its stock has no necessary relation to the winding up of the corporation’s business. Commissioner v. Straub, 76 Fed. (2d) 888 (C. C. A., 3d Cir.); Commissioner v. Cordingley, 78 Fed. (2d) 118 (C. C. A., 1st Cir.).
*801 Section 115 (g) was written into the revenue act so that corporations might not resort to the device of stock redemption or cancellation in order to make distributions essentially resulting in a division of profits, Brown v. Commissioner, 79 Fed. (2d) 73 (C. C. A., 3d Cir.). The recognized test of whether a distribution is essentially equivalent to a taxable dividend turns on whether the capitalization was for an honest business purpose. If the purposes of the corporation in capitalizing earnings and later redeeming the stock were legitimate, the courts will refuse to hold the distribution in redemption or cancellation a taxable dividend. Hyman v. Helvering, 71 Fed. (2d) 342 (D. C. App.); certiorari denied, 293 U. S. 570; Commissioner v. Babson, 70 Fed. (2d) 304 (C. C. A., 7th Cir.); Ward M. Canady, Inc. v. Commissioner, 76 Fed. (2d) 278 (C. C. A., 3d Cir.); certiorari denied, 296 U. S. 612; Commissioner v. Rockwood, 82 Fed. (2d) 359 (C. C. A., 7th Cir.)
If, however, the corporation’s actions are for the purpose of throwing a protective cloak around the distribution of its earnings, so that formally it appears to be a capitalization of earnings, followed by a redemption of all or a part of the stock representing the increase in capital, the courts hold that the distributions are essentially equivalent to a taxable dividend. McGuire v. Commissioner, 84 Fed. (2d) 431 (C. C. A., 7th Cir.); certiorari denied, 299 U. S. 591; Randolph v. Commissioner, 76 Fed. (2d) 472 (C. C. A., 8th Cir.); certiorari denied, 296 U. S. 599; Robinson v. Commissioner, 69 Fed. (2d) 972 (C. C. A., 5th Cir.); Hill v. Commissioner, 66 Fed. (2d) 45 (C. C. A., 4th Cir.).
Whether the corporation is in process of liquidation is a question of fact, W. F. Kennemer, 35 B. T. A. 415, 421, and cases there cited. Liquidation has been defined as the operation of winding -up the corporate affairs by realizing its assets, paying its debts, and distributing the balance among the stockholders. W. E. Guild, 19 B. T. A. 1186, 1204. Whether the company here was in process of liquidation must be determined from the facts of record.
The circumstances and events preceding the distribution of February 11, 1931, support petitioners’ contentions. Many years prior thereto the officers of the company recognized that certain factors were curtailing the demand for their products. The decline in the demand is depicted by the shrinkage in the company’s earnings beginning in the late twenties, a fact of which the officers and directors of the company were well aware. The record of earnings and dividends for the 11-year period 1920 to 1930, inclusive, shows that during this period the company was paying out dividends slightly in excess of earnings, and that in the taxable year 1931 an ordinary dividend of $49,600 had been paid prior to the distribution made on *802 February 11, 1931. The intentional undermaintenance of the company’s plant and equipment for years prior to 1931 and the failure to replace retiring employees support petitioner’s position that the company was going out of business. Two efforts by the stockholders to sell all the stock of the company as a going concern lend further support to petitioner’s theory.
In addition to the foregoing we have the formal declarations and affirmative actions of the officers, directors, and stockholders which have resulted in the almost complete liquidation of the company. In December 1930 the directors recommended that 40 percent of the company’s stock be retired in partial liquidation. The president’s letter to the stockholders prior to the annual meeting and the enclosed waiver of notice and proxy forms each advised of the proposed 40 percent reduction in partial liquidation. The stockholders held their annual meeting on February 2, 1931, at which all the stockholders of the company were present in person or represented by proxy and voted the reduction as recommended. On February 5, 1931, the decrease in the company’s capital stock was authorized by the Secretary of State of Missouri, and on February 11, 1931, the redemption and cancelation occurred.
Coupling the circumstances leading up to the distribution on February 11, 1931, with the affirmative acts of the company’s officers, directors, and stockholders, it is our opinion that the distribution on that date was the first in a series of distributions in liquidation of the company. The redemption and cancelation of the stock was not “at such time and in such manner” as to make the distribution essentially equivalent to the distribution of a taxable dividend. Furthermore, the distribution of February 11, 1931, was not a distribution in the ordinary course of business, made with the intent to maintain the company as a going concern, but was made after the company decided to quit and with the intent to liquidate its business. Holmby Corporation v. Commissioner, 83 Fed. (2d) 548, affirming 28 B. T. A. 1092; Helmich v. Hellman, 276 U. S. 233; Canal-Commercial Trust & Savings Bank v. Commissioner, 63 Fed. (2d) 619; certiorari denied, 290 U. S. 628.
We can not agree with respondent’s interpretation of the testimony of the witness Einstein. The witness stated, in effect, that the company took no definite action until “we made that liquidation.” Respondent says the relative pronoun used referred to the 1932 distribution. A careful examination of the testimony preceding and following this statement will disclose that - the witness was referring to the 1931 distribution. Indeed, there is no other distribution here in question, as respondent admits the 1932 and 1933 distributions were in liquidation.
*803 In Docket No. 75524 the petitioners, as trustees, present the additional proposition that the trust realized no taxable income by the distribution of February 11, 1931. This is true, they say, because the stock distributed to them by the executors constituted capital of the trust, and the basis for determining gain or loss upon the distribution of said stock is its fair market value at the time of distribution. Sec. 113 (a) (5), Revenue Act of 1928.[5] Therefore, they insist that the cash received replaced the shares surrendered as capital, and, since the cash received equaled the fair market value of the stock when acquired, the petitioners realized no gain upon the redemption of 40 percent of their stock.
Our decision in St. Louis Union Trust Co. et al., Trustees, 30 B. T. A. 370, 378, supports petitioners in their contentions. The provisions of section 113 (a) (5) prescribe the basis for' determining gain or loss, and, since the parties have stipulated the fair market value at the basic date and the date at which distribution was made, the only relevant fact remaining is the amount received upon disposition of the stock. It is undisputed that petitioners received $70 per share in redemption of 40 percent of their stock, and in view of the uncontroverted facts petitioners realized no gain upon the redemption.

Decision will be entered under Rule 50.

 Sec. 115. (c) Distributions in liquidation.-—-Amounts distributed in complete liquidation of a corporation shall be treated as in full payment In exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed in partial liquidation (other than a distribution within the provisions of section 112 (h) of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

 Sec. 115. (g) Redemption of stock.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. In the case of the cancellation or redemption of stock not issued as a stock dividend this subsection shall apply only if the cancellation or redemption is made after January 1, 1926.

 Sec. 115. (h) Definition of partial liquidation.—As used in this section the term “amounts distributed in partial liquidation” means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock,

 Sec. 113. (a) (5) Property transmitted at death.—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent’s estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other eases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. In the ease of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust-instrument to the property after the grantor’s death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor’s death.